UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: GRAND JURY INVESTIGATION 2011R00774 | Case No.  11-CR-90758 JSC<br><br>**ORDER GRANTING MOTION TO EXONERATE SURETY AND RELEASE BOND AS TO KAI ZHUANG**<br><br>(Dkt. No. 62) |

Now pending before the Court is the motion of Kai Zhuang to exonerate his surety and release the $750,000 bond pursuant to Federal Rule of Criminal Procedure 46(g).  (Dkt. No. 62.) Having considered the parties' briefs and having had the benefit of oral argument on June 9, 2015, the Court hereby GRANTS Mr. Zhuang's motion and orders the government to EXONERATE the surety and RELEASE the bond.

**BACKGROUND**

Mr. Zhuang initially appeared before the Court in September 2011 on a material witnesses warrant pursuant to 18 U.S.C. § 3144 after having entered into a cooperation agreement with the government.  In December 2011, he was permitted to return to China once his employer, Pangang Titanium Industry, Co., Ltd. ("Pangang"), posted a $750,000 bond as a surety for Mr. Zhuang's subsequent appearance and testimony at trial in *United States v. Liew*, No. 11-cr-573 JSW. Pursuant to the Court's Order, the bond was to be returned once Mr. Zhuang "fulfilled his cooperation by testifying at trial, submitting to a Rule 15 deposition [], or after the passage of 24 months, whichever comes first."  (Dkt. No. 36 at ¶ 5.)

In January 2012, the government contacted Mr. Zhuang's counsel to arrange for Mr. Zhuang to return to the United States to be interviewed.  (Dkt. No. 62, Ex. B.)  The government

subsequently revised its request and sought to interview Mr. Zhuang at the U.S. Embassy in Beijing on March 10, 2012.  (*Id*. at Ex. C.)   Mr. Zhuang agreed to appear, but prior to the meeting he was advised by his Chinese attorney that he would be violating Chinese law if he submitted to an interview by U.S. prosecutors unless the interview took place according to the Mutual Legal Assistance Agreement ("MLAA") between the United States and China.  (*Id*. at Ex. E; Dkt. No. 64, Zhuang Decl. ¶ 3.)  This information was relayed to government counsel, and counsel agreed to make a "request for mutual legal assistance from the Chinese."  (Dkt. No. 62, Ex. D.)  Mr. Zhuang's counsel thereafter sent a letter to the government reiterating that he could only participate in an interview with the U.S. government if it accords with the MLAA and seeking the government's facilitation of this process.  The record does not reflect that the government ever responded to Mr. Zhuang's counsel's letter or that it did anything further with respect to its request to interview Mr. Zhuang.

On the eve of the expiration of the Bond Order, the government moved to extend the Order to February 1, 2014.  The Court granted the request and the Bond Order was modified to require that "once the parties agree that Mr. Zhuang has fulfilled his cooperation by testifying at trial, or by February 1, 2014, whichever occurs first, the $750,000" shall be returned.  (Dkt. No. 49 at 3:7-9.)

Two days later, the government mailed Mr. Zhuang's counsel a letter stating in relevant part:
> Pursuant to Judge Corley's modification, we would like Mr. Zhuang to testify prior to February 1, 2014.  Jury selection begins on January 6, 2014, and testimony is likely to commence on January 7.  We propose having Mr. Zhuang testify sometime during the week of January 13, 2014, unless a time later in the month would be more convenient.
>
> Please let us know the status with regard to your client's travel to the United States for trial.  We are prepared to assist in obtaining the appropriate visa and making travel arrangements at government expense, once we get details from you as to whether your client is available the week of January 13.

(Dkt. No. 62, Ex. G.)

Upon receipt of the government's letter, Mr. Zhuang contacted his employer, Pangang, to make arrangements to travel to the United States for trial.  (Dkt. No. 64, Zhuang Decl. ¶ 7.)

2

Pangang's company policy required all upper level management employees, such as Mr. Zhuang, to make requests to travel outside China through the company and the company had custody of Mr. Zhuang's passport. (*Id*. ¶ 6.)  On January 8, 2014, Pangang denied his travel request stating that "it would not approve the request to travel unless the U.S. prosecutors make their request for me to come to the U.S. in accordance with MLAA." (*Id*. at ¶ 7, Ex. E.)

The parties' briefs at the time of oral argument on the pending motion to exonerate suggested that nothing further occurred with respect to Mr. Zhuang until he filed the motion, which the government opposes and instead contends that the bond should be forfeited as Mr. Zhuang did not appear to testify. [1]

Following oral argument, however, the government submitted a request to supplement the record with copies of email communications exchanged between government counsel and counsel for Mr. Zhuang from December 2013 to February 2014.  Later that day it submitted yet another request, this request seeking to include the witness's grand jury testimony from November 29, 2011.  Neither request explains why this material was not submitted with the government's opposition brief; at most, the request, which is not supported by a declaration, states the government's belief that these communications were "required to procure Zhuang or Yang's appearance." (Supp. Req. at 2:1-2.)

The Court will not consider these untimely submissions.  First, the submissions blatantly violate the Local Rules of this Court.  Northern District of California Criminal Local Rule 47-2 (Noticed Motion In A Criminal Case) governs the pending motion.  Rule 47-2 mandates that any opposition to a noticed motion in a criminal case "*shall* comply with Civil L.R. 7-3(b), (c) and (d)."  N.D. Cal. Crim. L.R. 47-2(d).  Civil Local Rule 7-(d) states: (d) Supplementary Material.  Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court

---

[1] At oral argument, government counsel suggested that either he or one of his colleagues may have spoken with counsel for Mr. Zhuang to follow up on this letter as "it is not at all unusual to ask an attorney to secure their client's presence at trial."  While that may be true, the government did not submit a declaration attesting to such a conversation with its opposition brief or otherwise indicate in its filing that the government had communicated with Mr. Zhuang's counsel following mailing of the December 16 letter.  Further, at oral argument, the government never indicated that it had email communications with Mr. Zhuang's counsel following the December 16, 2013 letter.

approval, except as follows." The exceptions do not apply here. The government's request does not even acknowledge this Rule, let alone explain why it should not apply to the government.

Second, even though Criminal Local Rule 47-2 requires an opposition to a noticed motion to be "filed not more than 7 days after the motion is filed," Crim. L.R. 47-2(d), the government filed its opposition *50 days* after receipt of Mr. Zhuang's motion to exonerate the bond. Again, no explanation is given for why the government believes the Rules do not apply to its motion practice. For this reason alone the Court could strike the government's opposition as untimely and grant the motion to exonerate. In any event, given that the government took nearly two months to respond to the motion, there is no reason that it could not have included the supplemental material with its opposition brief; indeed, that it submitted the material within hours of oral argument shows that the material was readily accessible to the government. By waiting until after the Court had reviewed the material and heard oral argument, the government deprived the Court of the opportunity to inquire of the parties as to those facts at oral argument. The government also deprived the movants of the opportunity to respond to the new material. The work of the district court would come to a grinding halt, or at least would slow down considerably, and expenses to the parties would mount, if parties could simply wait until oral argument to decide if they want to submit additional material. That is not how the administration of justice works. The government's violation of the Rules is especially egregious given that at oral argument the government did not even ask if it could submit supplemental material, even though it unilaterally did so within hours of the argument. Accordingly, the government's unexplained requests to file additional evidence following submission of the motion is DENIED.

## DISCUSSION

Federal Rule of Criminal Procedure 46(g) provides that the court must "exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture." *Id.*; s*ee also United States v. Sortini*, 497 F. App'x 738, 739 (9th Cir. 2012) ("FRCP 46(g) requires a district court to release bond monies when a bond condition has been satisfied.")

The Court finds that the government made no genuine effort to procure Mr. Zhuang's

4

appearance at trial.  The letter the government mailed to Mr. Zhuang's counsel on December 16 can at most be seen as expressing the government's desire to have him testify at the *Liew* trial in January 2013.  Although the letter acknowledges that Mr. Zhuang would need a visa to travel and that the government had agreed to cover the expense of his travel, the government did not follow up to even verify that the letter had been received.  This is especially troubling given that the government was on notice of the difficulties associated with Mr. Zhuang's participation absent compliance with the MLAA procedures because of the issues that arose in connection with the government's proposal to interview him at the U.S. Embassy in Beijing.  Despite this conduct, or more precisely, lack of action, the government contends Mr. Zhuang should be found to have forfeited his bond because he did not magically appear outside the courtroom awaiting his turn to be called as a witnesses beginning January 13.  The government's position is untenable—if the government sincerely sought to have Mr. Zhuang testify at trial it would have done more than mail the December 16 letter.  It would have actually followed up to help procure his visa, make his travel arrangements, and arrange a specific day for him to testify.  Instead, the government sent the letter and then did nothing until 16 months later when the underlying motion was filed.  The Court thus finds that the government did not call and never intended to call Mr. Zhuang at trial.

The Court's Modified Bond Order stated that "Once the parties agree that [Mr. Yang] has fulfilled his cooperation by testifying at trial, or by February 1, 2014, whichever occurs first, the $750,000 deposited with the Clerk of the court shall be returned within 14 days..." (Dkt. No. 49 at 3:7-9.)  As the deadline has long since passed, the surety is hereby EXONERATED and the bond shall be RELEASED forthwith.  The Clerk shall issue the check returning the $750,000 security payable to the surety's law firm, Quinn Emanuel.

This Order is stayed 48 hours to allow the government time to consider whether to file an appeal.  Thereafter, the Order will be stayed while an appeal, if any, is pending.

**IT IS SO ORDERED.**

Dated: June 10, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge

5