UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE: GRAND JURY INVESTIGATION 2011R00774

Case No. 11-CR-90758 JSW (JSC)

**ORDER DENYING MOTIONS TO SET ASIDE BOND FORFEITURE**

Dkt. Nos. 96 & 99

Material witnesses Kai Zhuang and Fudong Yang ("Zhuang" and "Yang" or the "Witnesses") move to set aside the forfeiture of the $750,000 bonds posted on behalf of each by their employers. (Dkt. Nos. 96 & 99.) The motions follow the District Court's Order declaring the bonds forfeited on the grounds that the witnesses violated the bonds' terms by failing to return to the United States to testify at trial. (Dkt. No. 95.) After carefully considering the Witnesses' pleadings and evidence, and having had the benefit of oral argument on November 12, 2015, the Court concludes that the Witnesses have not met their burden to set aside the forfeiture.

**BACKGROUND**

Yang and Zhuang initially appeared before the Court in September 2011 on material witness warrants. In December 2011, and pursuant to the parties' stipulation (agreed-to by the Court), Zhuang was permitted to return to China once his employer, Pangang Titanium Industry, Co., Ltd., posted a $750,000 bond as a surety for Zhuang's subsequent appearance and testimony at trial in *United States v. Liew*, No. 11-cr-573 JSW. (Dkt. No. 36.)[1] Yang was likewise permitted to return to China once his employer, Pangang Group International Economic and Trading Co., Ltd., posted a $750,000 bond as a surety for Yang's subsequent appearance and testimony at the

---

[1] The evidence shows that the bond was actually posted by Pangang Group International Economic and Trading Co., Ltd., Yang's employer. (Dkt. No. 95 at 2 n.2.)

*Liew* trial. (Dkt. No. 34.) The stipulated orders permitting the witnesses return to China ("the Release Orders") in exchange for the bonds also contained the following provisions:

> 4.   [Mr. Zhuang and/or Mr. Yang] will continue to cooperate with the United States pursuant to the parties' agreement, including:
>
> . . . .
>
> c.   Returning to the United States to testify at trial, if requested by, and at the expense of the United States. The United States agrees that if [the witness] travels to and from the United States, the United States will take no action to subject [the witness] to arrest or detention, or to prevent him from entering or departing the United States, based on any offense relating to this case, investigation, or any matter arising from or related to this case or investigation, unless [the witness] is in violation of his immunity agreement dated August 11, 2011.
>
> 5.   Once the parties agree that [Mr. Zhuang and/or Mr. Yang] has fulfilled his cooperation by testifying at trial, submitting to a Rule 15 deposition (or the parties determine that one is not needed), or after the passage of 24 months, whichever occurs first, the $750,000 deposited with the Clerk of the Court shall be returned within 14 days[.]
>
> 6.   Either party to this stipulation may bring a motion to seek reasonable modification to this Order. The Court will retain jurisdiction to entertain any such motions.

In September 2013, the government emailed trial subpoenas to counsel for Zhuang and Yang requesting the Witnesses' appearance and testimony at the *Liew* trial. (Dkt. No. 83-11 (Ex. K).) The government's email indicated that it would also be seeking an extension of the Release Orders to accommodate the January 2014 trial date. On the eve of the expiration of the Release Orders, the government moved to extend the Orders to February 1, 2014. The Court granted the request and the Release Orders were modified to require that "once the parties agree that [Mr. Zhuang and/or Mr. Yang] has fulfilled his cooperation by testifying at trial, or by February 1, 2014, whichever occurs first, the $750,000" shall be returned. (Dkt. No. 49 at 3:7-9.)

Two days after entry of the Court's Order, the government mailed counsel for Yang and Zhuang identical letters stating in relevant part:

> Pursuant to Judge Corley's modification, we would like [Mr. Yang / Mr. Zhuang] to testify prior to February 1, 2014. Jury selection begins on January 6, 2014, and testimony is likely to commence on January 7. We propose having [Mr. Yang / Mr.

2

>   Zhuang] testify sometime during the week of January 13, 2014, unless a time later in the month would be more convenient.
>
>   Please let us know the status with regard to your client's travel to the United States for trial. We are prepared to assist in obtaining the appropriate visa and making travel arrangements at government expense, once we get details from you as to whether your client is available the week of January 13.

(Dkt. No. 58 at 10 (Ex. B); Dkt. No. 62 at 31( Ex. G).[2])

According to Zhuang, because he is classified as "mid-level to upper-level management" by his employer, he had to receive permission of "his superiors" before he traveled outside of China; indeed, his employer kept his passport and would not return it to him before approving his travel. (Dkt. No. 64 ¶ 6.) On December 24, 2013, he asked his employer for permission to travel to the United States, and his employer passed on that request to the parent corporation. (*Id.* at ¶ 7.) The parent corporation refused to approve Zhuang's travel unless the United States government made a request for his travel in accordance with the Mutual Legal Assistance Agreement ("MLAA") between the United States and China. *(Id.)* Mr. Zhuang's counsel had some back and forth correspondence with the government regarding his issues obtaining permission to travel and the government's position that the MLAA did not apply. (Dkt. No. 83-6 (Ex. F.) Yang similarly attests that he sought approval from his employer to travel to the United States for trial, but the company informed him that he "could not receive the certificate approving [his] travel that was necessary to obtain a passport, because the United States did not formally request [his] presence to testify pursuant to the [MLAA]." (Dkt. No. 59 ¶ 4.) Yang's counsel thereafter reached out to the United States Attorneys, but they did not respond. (Dkt. No. 58, Niespolo Decl. at ¶¶ 2, 6; Ex. C.) Neither Yang nor Zhuang appeared to testify at the *Liew* trial. Mr. Liew was convicted on all counts. *See United States v. Liew*, No. 11-cr-573 JSW, Dkt. No. 804.

In April 2015, both Yang and Zhuang moved to exonerate the surety and return the bonds posted on their behalf by their employers. (Dkt. Nos. 57 & 62.) The government opposed and counter-moved for forfeiture of the bonds. (Dkt. No. 54.) Following a hearing, the Court ordered the bonds exonerated on the grounds that the government never made any genuine effort to

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

3

procure the appearance of either Zhuang or Yang at trial and never intended to call them as witnesses in the *Liew* trial. (Dkt. Nos. 75 & 76.)

The government appealed the Court's order to District Court Judge White who reversed. Judge White applied contract law principles and concluded that the Witnesses breached the Release Orders by not returning to the United States to testify. In doing so, Judge White rejected the Witnesses' suggestion that their non-appearance should be excused because "governmental authorities" impeded their ability to travel, concluding that although the parties had included a caveat in the Release Orders regarding travel difficulties which might arise for purposes of deposition or interviews, their failure to include a similar caveat for purposes of trial testimony was intentional. (Dkt. No. 95 at 6.) Judge White noted that the parties had not addressed whether the bond should be set-aside or remitted, and granted the Witnesses and/or sureties permission to file a motion to this effect with the undersigned judge. (*Id*. at 7.)

The pending motions to set aside the bond forfeiture followed. (Dkt. Nos. 96 & 99.)

**DISCUSSION**

Under Federal Rule of Criminal Procedure 46(f)(2)(B), a court "may set aside in whole or in part a bail forfeiture upon any condition the court may impose if . . . it appears that justice does not require bail forfeiture." In the Ninth Circuit, courts generally consider the following factors in deciding whether a forfeiture should be set aside:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond.

*United States v. Nguyen*, 279 F.3d 1112, 1115-16 (9th Cir. 2002) (internal quotation marks and citation omitted). The factors are non-exclusive and not all "need to be resolved in the government's favor." *Id.* (internal quotation marks and citation omitted).

Although Zhuang and Yang filed separate motions to set aside the forfeiture, their arguments are nearly identical and Yang explicitly adopts Zhuang's arguments. The motions' thrust is that the forfeiture should be set aside because neither Zhuang's nor Yang's non-appearance was willful, and in fact, was the result of the United States government's failure to make a formal request under the MLAA to procure their appearance at trial. Yang and Zhuang

4

contend that the other *Nguyen* factors weigh in their favor as well. The government, for its part, contends that the Witnesses lack standing to request that the forfeiture be set aside, and alternatively, argues that the *Nguyen* factors weigh in its favor. The government further contends that the Court cannot rely on the declarations of Yang or Zhuang, nor the declaration of Sun Cejun, which was submitted in support of the motion to set aside. The Court must address these evidentiary issues as a preliminary matter.

A.     **The Government's Evidentiary Objections**

In support of their motions, Yang and Zhuang rely on the declarations they submitted in support of their motions filed in April 2015, as well as a declaration from Sun Cejun, the Division Chief of the Legal Affairs Department of the Pangang Group Company Ltd., which is the parent company for the sureties here: Zhuang's employer Pangang Titanium Industry, Co., Ltd., and Yang's employer Pangang Group International Economic and Trading Co., Ltd. (Dkt. Nos. 59 (Yang Decl.), 64 (Zhuang Decl.), & 99-2 (Cejun Decl.).) The government characterizes Yang's and Zhuang's declarations as self-serving and objects that it has not had the opportunity to cross-examine them regarding their statements. The government's objections are untimely as these declarations were filed in April and were the basis of orders by this Court and Judge White.

The Sun Declaration provides the primary support for the Witnesses' argument that their breach was not willful because their non-appearance was result of Chinese law and the government's failure to make an MLAA request to the Chinese government to secure their appearance at trial. The government objects to the Sun declaration as providing an expert opinion on the requirements of Chinese law without demonstrating any expert qualifications and because the declaration fails to cite to any Chinese legal authority in support of the statements therein. The government also objects to Sun's description of communications in 2013 for failing to attach the communications themselves. These objections go to the weight of the evidence; accordingly, the Court declines to strike the declaration.

B.     **Yang and Zhuang's Standing to Set Aside the Forfeiture**

The government next contends that neither Yang nor Zhuang have standing because they do not have any interest in the bond money as it was posted by their employers. The Court is not so sure. In *Babb v. United States* the Tenth Circuit noted:

5

> In addition to the financial interest the principal has in obtaining a vacation of the forfeiture of his appearance bond, such an action may be required to obtain immunity from prosecution for 'bail jumping.' *Migdol v. United States*, 298 F.2d 513, 91 A.L.R.2d 1283 (9th Cir. 1961); contra, *Franco v. United States*, 119 U.S.App.D.C. 339, 342 F.2d 918 (1964). Both courts apparently believed it significant that the vacation in *Migdol* was granted on motion of the defendant and not on motion of the surety thereby acknowledging the standing of the criminal defendant to attack the forfeiture of his bond.

*Babb v. United States*, 414 F.2d 719, 722-23 (10th Cir. 1968). In *Migdol*, a criminal defendant failed to appear for sentencing in a counterfeiting cases, and the court declared his bail forfeited under Rule 46(f)(1), but no proceedings to enforce the forfeiture were ever initiated and judgment was not entered on the forfeiture. *Migdol*, 298 F.2d at 515. When the defendant subsequently appeared and received his sentence on the counterfeiting charge, the court set aside the forfeiture and exonerated the bond; eight days later he was indicted on bail jumping charge. Notably, the first element of a bail jumping charge was forfeiture of bail. *Id*. (citing 18 U.S.C. § 3146). As the government has not established as a matter of fact or law that the Witnesses could not be subject to a criminal charge for failing to appear at trial, the Witnesses appear to have an interest in having the bond forfeiture set aside.

### C. The *Nguyen* Factors

As noted, the *Nguyen* factors are

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond.

279 F.3d at 1115-16.

#### 1. Willfulness

Yang and Zhuang argue that the breach was not willful because Chinese law requires a formal request from the United States government under the MLAA before they can testify at a criminal trial in the United States. They thus contend that they fall under the rule "that bail will not be forfeited where performance is rendered impossible by the act of God, or of the law, or of the obligee." *United States v. Carolina Cas. Ins. Co*., 237 F.2d 451, 452 (7th Cir. 1956); *see also United States v. Urquiza*, No. 04-CR-191, 2006 WL 2691074, at *3 (E.D. Wis. Sept. 19, 2006)

(setting aside bail forfeiture where the defendant failed to appear because the government had deported him). As support for their argument they rely on Sun's declaration. Sun declares that

> Pursuant to Chinese law, Chinese nationals may not participate in foreign legal proceedings unless the foreign government undertakes a formal request, such as through the Agreement Between the Government of the United States of America and the Government of the People's Republic of China on Mutual Legal Assistance in Criminal Matters ("MLLA"), and that request is approved by the Chinese Central Authorities.

(Dkt. No. 97 ¶ 4.) He attests further that the parent corporation would have approved the request had the United States government made a formal request approved by the Chinese Central Authorities. (*Id.* ¶ 5.)

The Court finds that the Witnesses' failure to appear was willful. First, there is no evidence in the record that these Witnesses ever disclosed to the government that, notwithstanding their promises to travel to the United States to testify at trial, they could only do so if their employers (the sureties) approved their travel and returned their passports. As these Witnesses had travelled to the United States before (indeed, that is why the Release Orders were required), they had to be aware of their employers' alleged policy of maintaining the Witnesses' passports and requiring that they approve the Witnesses' travel before releasing the passports. Yet, the Release Orders give no hint that the Witnesses could keep their promises to the government only if their employers' approved such travel. The Witnesses thus withheld this information from the United States or the supposed policy does not exist. In either case, these facts support willfulness.

Second, the Witnesses' insistence that Chinese law forbids their travel to testify at a criminal trial in the United States unless the Chinese Central Authority approves is not credible. Sun does not identify any such Chinese law and the Witnesses do not offer any other evidence, hearsay or otherwise, that such a law actually exists. Further, the Court gives little weight to Sun's testimony as he is an officer of the sureties' parent corporation—in other words, his company has a financial interest in having the bond forfeitures set aside.

Third, the plain language of the MLAA does not prohibit a Chinese national from testifying at a criminal trial in the United States. (Dkt. No. 93.) It is apparent that the MLAA's purpose is to allow each government to assist the other in obtaining evidence relevant to a criminal investigation when such assistance is needed. The United States did not need the Chinese

7

government's assistance because the Witnesses, as a condition of their release, agreed to return to the United States to testify.

Fourth, the Witnesses' own employers, or rather, the parent corporation of the companies for which the Witnesses serve as "high ranking employees," purportedly prohibited the Witnesses' travel. Yet, the record is devoid of any evidence that these Witnesses made any effort to convince their employers that they were required by written agreement to return to the United States. Indeed, Zhuang's written request to his employer for permission to travel makes no mention of the Release Order and his promise to the United States government. (Dkt. No. 64 at 16.) Further, the record is silent as to what would have happened if the Witnesses' employers returned the passports to the Witnesses and the Witnesses travelled here.

### 2. The Sureties' Participation in Apprehending the Witness

This factor weighs in favor of maintaining the bond forfeiture as, if the Witnesses are to be believed, the sureties themselves prevented the Witnesses from complying with the Release Orders.

### 3. Prejudice to the Government

Given that the government obtained a conviction in *Liew* on all counts, notwithstanding the lack of testimony from Yang and Zhuang, there does not appear to be any prejudice despite the government's arguments to the contrary. Moreover, the government never even moved for forfeiture of the bond, and only sought to do so after the Witnesses moved to exonerate the bond.

### 4. Mitigating Factors

The parties' arguments as to this factor mirror the arguments as to willfulness.

### 5. The Sureties' Status

Traditionally, this factor looks to the relationship between the surety and the bondee, i.e., are they a family member or a friend. *Nguyen*, 279 F.3d at 1116. Here, the Witnesses argue that the factor goes to whether the surety could have understood the risks of non-appearance and as the sureties here were Chinese companies, subject to Chinese laws, they could not have expected to forfeit the bond if Chinese law prohibited the Witnesses from testifying. As the Court does not find credible the Witnesses' contention that Chinese law prohibited them from travelling to the United States to testify, it follows that their argument as to this factor is not persuasive.

### 6. Amount of the Bond

The amount of the bond—$750,000—does not weigh in either side's favor.

### 7. Other Relevant Factors

The Witnesses argue that the government's delay in seeking bond forfeiture weighs in their favor.  The Witnesses, however, do not offer any evidence as to how they or the sureties have been prejudiced by the delay.  Their inability to substantiate that Chinese law prohibited them from travelling to the United States to testify has nothing to do with any delay.

## CONCLUSION

After viewing the totality of the circumstances, and in light of the District Court's finding that the Witnesses breached the Release Orders, the Court declines to set aside the bond forfeiture for either Witness.

This Order disposes of Docket Nos. 96 and 99.

**IT IS SO ORDERED.**

Dated: November 20, 2015



JACQUELINE SCOTT CORLEY
United States Magistrate Judge